### WILLIAM S. BISHOP *vs.* JOHN WILDS' Adm'r.

The proviso (sec. 10,) in the act of limitations, which allows one year for re-commencing actions in which the judgments have been reversed, &c., applies to suits *pending* at the date of said law, and on the 1st Sept., when its repealing clause took effect.

A law which *enlarges* the time for bringing suit beyond the time allowed by the law existing when the contract was made is *not* a law *impairing* the *obligation* of the contract.

*Quere.* Would a law limiting the right to sue to a *less time* than was allowed by the law existing when the contract was made be unconstitutional, as impairing the obligation of the contract?

In an action on a guardian bond, the plff. must show a *sufficient breach* in his replication or other pleading, or by suggestion on the record.

SUMMONS debt on guardian bond, with the usual condition.
*Narr* assigning breaches. Plea, the several statutes of limitation. *Replication* that suit was brought within three years after plff. came of age, and recovery and judgment had thereon; that the High Court of Errors and Appeals reversed the judgment, and that this suit was brought on the same bond within one year from the date of the reversal. Deft. *rejoins* that plff. came of age on the 29th of August, 1824, and was twenty-four three years after, and that *this* suit was not brought until July 1831. Plff. *surrejoins* that he brought suit on said bond to October Term 1827, on which there was judgment, and afterwards a reversal as aforesaid, and new suit within a year after; and that the first suit was pending when the limitation act of 1829 was passed.

*General demurrer* to this surrejoinder, and joinder in demurrer.
Plff. came of age 29th August, 1824. The first suit was brought 8th August, 1827, and judgment for plff. in the Supreme Court, which judgment was reversed by the High Court of Errors and Appeals, at the June Term, 1831, (a) and the present suit brought within one year thereafter. Act of 1766, (1 *vol.* 424,) sec. 14, pro-

(a) THOMAS WALLACE, Adm'r. of JOHN WILDS. d. b. appln't *vs.* WILLIAM S. BISHOP, Plff. b. respondent.

HIGH Court of Errors and Appeals, June Term, 1831.
Writ of Error to the Justices of the Supreme Court of the state of Delaware, in and for Kent county. CORAM *Harrington*, Ch. Jus. Supreme

vides that all actions on guardian bonds shall be commenced within *six* years after the passing of said bonds, saving the rights of per-

Court; *Clayton*, Ch. Jus. Com. Pleas; *Cooper* and *Stout* Justices. The *Chancellor* did not sit, he having been *Chief Justice* of the Supreme Court when the cause was tried below.

This was an action on a guardian bond against Thomas Wallace, the administrator of John Wilds, who was one of the sureties of Lewis Williams, in his guardianship of William S. Bishop.

*Narr.* The narr was filed generally, without setting forth the condition of the bond or assigning breaches. The deft. craved oyer, and pleaded performance; stat. limitations; plene administravit and payment. Replication to the plea of the statute; infancy and suit brought within three years after full age; rejoinder and issue. To the plea of plene administravit, replication denying the plea and tendering issue; similiter and issue. The plea of payment was withdrawn.

*Plea.* The case turned upon the first plea of *performance*, and the replication thereto. The plea of performance, after noticing the prayer and grant of oyer sets forth the bond and condition. The bond was executed by Lewis Williams, John Wilds, Maskline Clarke and James Spear, to William S. Bishop, minor, in the sum of $3,000, with condition that if the said Lewis Williams should faithfully discharge his trust as guardian of the said Wm. S. Bishop, "and shall and do well and truly pay and deliver, or cause to be paid and delivered unto the above named William S. Bishop, his heirs, executors, administrators, or assigns, all such sum or sums of money and other estate that shall come to his hands or possession as guardian of the said Wm. S. Bishop, deducting thereout such reasonable sum as the Register for the probate of wills and granting letters of administration for the county of Kent aforesaid should allow for the said guardian's care and trouble in managing the estate of the said Wm. S. Bishop," then the bond to be void. The plea then stated, in the words of the bond, that Lewis Williams did discharge the trust in him reposed as guardian, and "did well and truly pay and deliver, or cause to be paid and delivered unto the above named Wm. S. Bishop, all sum and sums of money and other estate that did come to his hands or possession, as guardian of the said Wm. S. Bishop, after deducting thereout, such reasonable sum as the Register for the probate of wills and granting letters of administration, for the county of Kent aforesaid, did allow for the said guardian's care and trouble in managing the estate of the said Wm. S. Bishop, according to the tenor and effect, true intent and meaning of the condition" of the bond aforesaid; and the plea concluded with a verification. *Replication* to this plea: *precludi non*, because he saith that the said Lewis Williams did not discharge his trust as guardian, &c., "and did not well and truly pay and deliver, or cause to be paid and delivered unto the said Wm. S. Bishop, all such sum and sums of money and other estate, that did come to the hands or possession of the said Lewis Williams, as guardian of the said Wm. S. Bishop, after deducting thereout such reasonable sum as the Register for the probate of wills and granting letters of administration, for the county of Kent aforesaid, did allow for the said guardian's care and trouble, in managing the estate of the said Wm. S. Bishop, according to the tenor and effect, true intent and meaning of the said writing obligatory, to wit, at &c.; *but* that the said Lewis Williams, the said guardian as aforesaid, from the said date of the said writing obligatory as aforesaid, and on divers other days and times, from the date of said writing obligatory, until the day of the date of suing out and exhibiting the writ aforesaid in this behalf, against the said Thomas Wallace, administrator as aforesaid, to wit, at, &c., by the said Wm. S. Bishop,

sons within the age of twenty-one years, &c., of bringing suit within *three* years, after coming of full age.

had and received as guardian of the said Wm. S. Bishop, and for and on account of the said Wm. S. Bishop, divers sums of money and other estate, amounting in the whole, to a large sum of money, to wit, to $3,000, lawful money, &c. Yet the said Thomas Wallace, although often requested as administrator as aforesaid, so to do, hath not yet accounted for, or paid over, or delivered to the said Wm. S. Bishop, the said sum of $3,000, or any part thereof, but hath therein wholly failed and made default; and the said sum of money so had and received by the said Lewis Williams, as aforesaid, is still wholly unpaid and unsatisfied to the said Wm. S. Bishop, contrary to the form and effect of the said condition of the said writing obligatory, to wit, at, &c., and this he the said Wm. S. Bishop, prays may be inquired of by the country, &c."

*Demurrer.* To this replication the deft. demurred, generally and specially; and assigned for cause of demurrer, "that the said replication does not contain any sufficient averment of time when moneys belonging to him, the said Wm. S. Bishop, came to the hands and possession of the said Lewis Williams; and for that the said Wm. S. Bishop, in his replication aforesaid, doth not aver that the said L. Williams did not in his lifetime, pay and deliver to the said Wm. S. Bishop, all the moneys and estate which came to his hands, as guardian of the said Wm. S. Bishop."

The plff. joined in demurrer. On argument, demurrer overruled; and it was ordered by the court, that the deft. join issue to this replication to the plea of performance. Issue; trial, and verdict for plff. for $791 09 damages assessed on occasion of the breaches assigned in the replication.

*Assignment of errors.* 1st. For that there is no sufficient assignment of a breach in the replication or other pleadings, or by way of suggestion on the record. 2nd. For that no time is set forth at which the said sum of $3,000, was received by the said Lewis Williams. 3rd. It is not averred that L. Williams did not in his lifetime, pay the said Wm. S. Bishop, the said sum of $3,000, but only that Thomas Wallace did not pay it. 4th. It is not averred that L. Williams received the sum of $3,000, during the minority of the said Wm. S. Bishop. 5th. For that the replication aforesaid does not show what part of the said $3,000 was money, and what part other estate of Wm. S. Bishop. 6th. It is no where averred that any sum of money or other estate of Wm. S. Bishop, remained in the hands and possession of the said L. Williams, which had come to his hands as guardian aforesaid, after deducting such reasonable sum as the Register did allow the said L. Williams, as guardian as aforesaid, for his care and trouble in managing the estate. 7th. For that there is error in this, to wit: That the court below, after overruling the demurrer, ordered the deft. to join issue, instead of giving judgment against him on the demurrer.

There were other errors assigned, but these are the principal ones, and embrace the whole matter of the argument.

*J. W. Ruth*, for plff. in error.

There is no sufficient assignment of a breach of the condition of this guardian bond, in any part of these pleadings. The only attempt at assigning a breach is in the conclusion of the replication, where after a general denial of the plea of performance, the plff. below specifies the receipt of $3,000 by Williams the guardian, which he says Wallace, the administrator of Wilds, did not pay over. Is this a breach? If it be not, the pleadings are fatally defective.

The assignment of breaches is absolutely necessary. The act of assem-

The Act of 1829, (7 *vol.* 266,) provides (*sec. 3,*) that no action shall be brought on a guardian bond after three years from the deter-

bly declares, that judgment shall not be rendered for the penalty of the bond, but for damages on occasion of the breaches assigned. *Digest,* 76. Wherever a party pleads' performance, the replication to that plea must suggest a breach: and if it do not assign a breach, or assign it badly, it is bad on demurrer either general or special. 1 *Chitty, P.* 613-4; *Archb.* 261, 2; *Willes R.* 12; 1 *Saund. R.* 103; 2 *Taunt.* 140-45; 2 *New. R.* 362-4; 5 *Comyn.* 352-3-4; *C.* 47, 48, 49.

It is not averred in this replication, that the guardian received any sum of money over and above what the Register had allowed him for care, &c.; nor that he had not paid all over and above. It is not even alledged that he did not pay the whole sum of $3,000. There was no cause of action arising to Bishop, from the fact that his guardian received $3,000, but it is from the fact of his not paying over such part of that sum as remained after deducting all allowances made by the Register. Yet the breach *must* disclose a cause of action, for it is upon this that the jury are to assess damages. 1 *Salk.* 138; 1 *Show.* 144; *Hob.* 198, 233. Is the averment that L. Williams received $3,000, which Wallace, the administrator of Wilds, Williams' surety, had not paid over, a breach of this condition? In no part of the replication nor of the record, is it averred that L. Williams did not pay over the money received by him, nor even that John Wilds in his lifetime, did not pay it. The guardian was only bound to pay over the balance of such sum as he received, after deducting allowances by the Register; we have pleaded that *he* did pay over this *balance;* the replication slips over the matter, and avers that *he* received $3,000, which *we* have not paid; and it is a rule in pleading, that where a material averment is not traversed, it is admitted. 1 *Chitty,* 667; 1 *Salk.* 91; 19 *Johns.* 95; 3 *Caines C.* 164. It might well be according to the finding of the jury that L. Williams received $791 09, of the estate of his ward; but did he receive that much *over and above* what was allowed him by the Register; and it may also be true that this sum was not paid over by Thos. Wallace, administrator of J. Wilds, but does this exclude the presumption of its having been paid by L. Williams or by John Wilds, in his lifetime, and this against a plea that it was paid by Williams, which is not even denied in the replication. The issue presented by these pleadings was an immaterial one; and the damages are assessed upon this issue. 5 *Taunt.* 386.

There being no sufficient breach assigned, the court below, ought to have rendered judgment on the demurrer, that the plff. take nothing by his writ; and we ask this court to render that judgment. *Const. Art. 7, Sec. 2.*

The conclusion of this replication is wrong; it ought to have been with a verification, giving us an opportunity to answer the new matter alledged. 1 *Chitty P.* 614; 1 *Saund.* 101, 102-3, *notes.* The court stopped Mr. Ruth on this point: The conclusion is undoubtedly wrong, but it is not assigned as a cause of error. The point was not insisted upon, but it was said that the conclusion was originally with a verification, and it was changed after the demurrer was overruled, and the deft. ordered to join issue.

*Huffington,* for deft. in error.

If a breach is assigned according to the words of the covenant, it is good. If a breach be good for any part it is sufficient. As it regards the time of the receipt of the money by L. Williams, the averment that it was received "on divers days and times" is sufficient. Where pleading tends to prolixity, general terms are allowed. More certainty is required in assigning an affirmative breach than a negative. *Lutw.* 115; 2 *Burr.* 772; 3 *T. Rep.*

mination or ceasing of the guardianship; saving (*sec.* 6,) to infants *three* years after coming to full age; and provided also, (*sec.* 10,)

374; 5 *B. & Ald.* 712; 8 *T. R.* 459; 8 *East*, 80; 1 *Bos. & Pul.* 641; 1 *Saund. Pl. & Evid.* 162. [134.] 3 *Taunt.* 423.

It is contended that we have not averred that this money was received by Williams, during the minority of Bishop. We have averred that it was received by Williams as *guardian*, which could only be during the minority of the ward. After that, he was not the guardian. The allowance of the Register for care and trouble, belongs to the guardian, and is no part of the estate of the ward. We have averred that Williams received $3,000 of the ward's estate, and the common sense meaning of the thing is, that he received so much estate *due* the ward, that which was coming to him, and consequently, over and above all allowances, for care and trouble. The law prohibits the Register from allowing more than the income of the ward's estate for his maintenance; it is absurd, therefore, to suppose that the whole of this estate was sunk by such allowance. The case of *Cornwallis* vs. *Savery*, 2 *Burr.* 772, is like this. There were deductions as here. It is therefore, sufficiently averred that this money was received during the minority of Bishop, and that it was over and above the allowances made by the Register; and it is expressly alledged that this money is still wholly due and unpaid to the ward. Here then is a complete breach.

The demurrer only goes to the replication and if sustained, the judgment would only have been that we should reply over; and not that we take nothing by our writ. 6 *Taunt.* 45; 13 *Johns.* 485; 9 *do.* 290; *Digest*, 27. If the court ought to have awarded a repleader, or given leave to amend this court will make the same order.

Where the court consider a demurrer frivolous, they will overrule it, and order the party to join issue. The consenting to join issue was a waiver of the demurrer. They might have refused to join issue, and suffered judgment to go upon the demurrer; but they waived it and went to the jury. It is insufferable to let a deft. take his chance upon the issue, and still retain his objection to the overruling of the demurrer. *Saund. Pl.* 514; 1 *Tidd*, 405-6; 2 *do.* 826. The conduct of the party here, therefore, deprives him of all objections which are aided by a verdict; and the informality here, if any, is cured by the verdict.

*H. M. Ridgely*, continues for deft. in error.

We don't deny that it was necessary for us to alledge a breach in some part of the pleadings; in the replication, as they have pleaded performance; but we contend that we have assigned a sufficient breach; a breach which would be held good by any of the English courts. Reads the condition of the bond; the plea of performance. This plea admits and supposes the receipt of the money, the passing the accounts, ascertaining the balance; which *balance* it alledges L. Williams paid over. The replication denies this payment of the balance, and makes a complete issue. If the pleading had stopped here, it would have been sufficient. But the replication does go on to state the receipt of a specific sum which is still wholly unpaid and unsatisfied. Here is a perfect breach.

The breach should be assigned in the words of the contract or according to their legal effect. And it was not necessary to state particularly, the time of the receipt of the money; it is alledged that L. Williams received it as guardian which could only be during the minority of Bishop. 1 *Chitty Pl.* 326; 3 *Burr.* 1718; *Lutw.*

Did the court err in ordering the deft. to join issue after overruling his demurrer? It is the uniform practice to order the party to answer over after his demurrer fails. And where the plff's. pleading presents the issue he may, if he please, add the common similiter; which the deft. is at liber-

That if in any action judgment should be rendered for the plff. and afterwards reversed, a new action may be brought upon the same

ty to strike out, if he do not consent to it. The order of the court did no more here. If the deft. wished the full advantage of his demurrer on appeal, he ought to have refused the issue. The consent to go to trial is a waiver of all objections to the pleadings, except such as may be fatal on special demurrer, after verdict. The verdict here cures all the defects, which at most, are merely formal. *Willes R.* 10; 1 *Sellon's Pr.* 388; 1 *H. Blac.* 254; *Imp. Prac.* 318; *Lord Hardw.* 67; 3 *Burr.* 1728; *Chitty Pl.* 331-2.

If the court should be of opinion that there is error; and error not cured by the verdict; what will this court do with the cause? If the demurrer had been decided against us below, the court would have permitted us to amend. Won't this court do the same?

*Bates,* in reply, for plff. in error.

There is nothing in the pleadings down to the allegation in the replication of the receipt of $3,000, which bears any resemblance to a breach. It is a mere general denial of the plea of performance; and yet the counsel says this is sufficient; here is an issue, an affirmative and a negative. But an issue on a general plea of performance cannot be taken; it tries nothing; it is immaterial; a specific breach or breaches *must* be assigned and issue taken thereupon. It is the want of this breach that makes the pleadings here radically defective—defective on general as well as on special demurrer; as well after verdict as before verdict; for the pleadings show no cause of action. The only attempt at a breach begins with the word *but* in the replication. The receipt of estate of the ward amounting to $3,000, is here alledged, a receipt by L. Williams the guardian, between the date of the guardian bond and the commencement of this suit, which sum to wit, the $3,000: the replication further states, Wallace the administrator of Wilds, has not paid over to Wm. S. Bishop the minor, and the same is still wholly unpaid and unsatisfied. Is this a breach well assigned? If it be not, there is no breach in these pleadings. Is there any thing in it inconsistent with the plea? Wallace pleads that Williams paid over the balance of the estate, after deducting allowances. The replication states that Williams received $3,000, which Wallace had not paid over. Suppose he had denied that Williams paid over the $3,000, still the breach would have been too large, for he was not bound to pay it over, but only a balance of it after deducting all reasonable allowances. A breach too large is defective. But here it is not even alledged that Williams did not pay this money; nor that John Wilds did not pay it. But again. The time of the receipt of this money by the guardian, is not sufficiently specific. Here again, the breach is too large. The money was received on divers days and times, between the date of the guardian bond, and the commencement of the suit. Now the replication to the plea of the statute in this case alledges that the suit was brought within three years after Bishop came of age. How then can it appear that the money or a part of it, was not received within the period which elapsed after Bishop came of age. If so received, undoubtedly the sureties in the guardian bond are not liable for it. "On divers days and times" may be sufficiently precise, to avoid prolixity, but this must all be *within* the time when the sureties were liable; and it must so appear.

Second. Our obedience to the order of the court cannot prejudice us here. We joined issue under their order, as we were bound to do. As to amendments, it is not usual for the court to allow them after a demurrer is argued and the opinion of the court known. 1 *Tidd,* 657.

CLAYTON, *Chief Justice of the Common Pleas,* delivered the opinion of the court reversing the judgment of the court below on the ground that there

cause of action at any time within *one* year after such reversal. "This proviso however shall not avail if the first action at the time of bringing it, were barred by this act."

The 13th or repealing section of the act of 1829 repeals the 14th section of the act of 1766, from and after the first day of September 1829, except so far as shall concern any action, cause of action, or matter which now is or on or before the first of September, shall be barred according to the form or effect of said section; and to any action or proceeding upon any such bond, which action or proceeding now is or on or before the first day of September shall be according to the form and effect of said section barred, the said section shall remain a bar and may be pleaded and shall avail in the same manner and as fully and effectually as if this act had not been passed.

*Bates*, in support of demurrer.

First. The statute of 1829 does not apply to suits previously brought and pending. Plff. was above twenty-four when that act was passed. His action was barred by the old law (1766,) before the passing of this act, and it remains barred according to the proviso of the 13th section. This act could not be pleaded to suits brought before it passed; its exception (sec. 10,) cannot go further back than the act itself.

Second. The construction of the other side would make it a retrospective law, varying the rights of the parties and unconstitutional. The law of the land as it exists enters into and forms a part of every contract. By that law the obligation of this contract

was not, in the replication or other pleading, or by way of suggestion on the record, any sufficient assignment of a breach of the condition of this guardian bond; and this court rendered judgment that the plff. below take nothing by his writ; and judgment for costs.

The plff. must assign a breach in some part of his pleading or suggest it on the record, and the breach must show a cause of action. A general denial of a plea of performance is not good. The breach here is manifestly too large both as to time, and the amount of the liability; it is larger than the condition; and it is defective, because it is not alledged with sufficient certainty that the money, &c., received by Williams the guardian was not paid over by him, nor by John Wilds, the deft's. intestate, in his lifetime. The conclusion of the replication that "the money is still wholly unpaid, &c." must in legal construction, be applied to the previous denial of its having been paid by Wallace, the administrator of Wilds. The replication ought to have averred the receipt by L. Williams, on divers days and times between the date of the bond, and the time when the minor came of age, of money and estate of the ward, amounting to a certain sum over and above such reasonable sum as the Register had allowed, &c., and then expressly negatived the payment of this *balance*, by Williams, the guardian, by John Wilds in his lifetime, or by the deft., his administrator, since his death.

A repleader is never awarded except against the party who makes the bad plea. Never after demurrer, except on a demurrer to a plea in abatement.

The judgment of the court below, ought to have been against the plff., that he take nothing by his writ; but according to their own decision they should have given judgment on the demurrer against the demurrant. Their not doing so, and ordering the party to join issue was error.

Judgment reversed.

*Ruth* and *Bates*, for plff. in error.
*Huffington* and *Ridgely*, for deft. error.

remained in force for *three* years after the plff. came of age, and *no longer*. If not sued upon within that time there is a perpetual bar which cannot be removed by a subsequent law. 4 *Wheaton* 122, *Sturges* vs. *Crowningshield* 199, 206-7, 209, 578; 12 *do.* 213, 259. The same law as to remedies as rights. 12 *Wheaton* 262, 286-7, 295. No law is good which takes away a vested right. 5 *Halls L. J.* 502, 303, 317, 27. The act of 1829 enlarges and extends the responsibility of Wilds under his contract, which no legislature has the power to do. 1 *Serg. & Rawle* 236; *Cox Digest* 181; 3 *Washington* 313.

Third. On this demurrer we may go back to any error in substance. The breach in the narr is defective. There is no allegation that the administrator of Lewis Williams (the guardian,) did not pay the balance due; the only allegation is that Lewis Williams did not pay, and that it remains due. Cites 5 *Com. Dig.* 3 52, c. 47-8; 1 *Chitty* 328-9; 6 *Johns.* 105; 1 *Lord Raymond* 284; 4 *Hen. & Mumf.* 277.

*Huffington* and *Ridgely*, for plff.

The act of 1829, repeals all limitation laws. Cases not then barred are regulated by that act. Unless you give it a retrospective effect as to such cases they can never be barred. Not being barred by the acts repealed when the repeal took place, they must be held within the retrospective operation of the act of 1829, or there is no act of limitation which can apply to them.

A retrospective law that goes to the remedy and not to the right is good. 3 *Dallas* 386, 396. A law cannot be passed to impair a contract, but it may to enlarge a remedy. The cases cited by Mr. Bates refer to impairing the rights of the creditor to sue; limiting his remedy to a shorter time. This act impairs no right; it lessens no remedy but enlarges this without affecting the right. You cannot lessen the limitation, for that would impair the contract; but you may enlarge the remedy. Acts of limitation are passed for the general good; they fix limits to remedies with a view to prevent stale demands; but they do not impair the rights or affect the obligation of the contract. 4 *Wheaton* 206-7; 1 *Kent Com.* 413 to 420; 2 *Peters* 380, 413.

Third. If there were any defect in the breach it should have been specially alledged; it cannot be urged on general demurrer. The narr however is good and the breach sufficient. If there be any defect it is in the plea of performance, which is too general. It should set out specially the acts of performance. 2 *Johns.* 413.

*Clayton* for deft. 2 Johns. don't apply to this case for the demurrer only opens those parts of the pleadings that refer to limitation.

The general object of this statute was to reduce the period of limitation. *(Journal of Senate of* 1829, *page* 18, *Judge Hall's remarks.)* The construction of the other side violates this object; for it would increase the surety's liability as to time. The plff. had no time by the old law in which to bring a new suit after reversal. The proviso (*sec.* 10,) is in a subsequent law and cannot apply to the case. Under the old law, the deft. had a *right* to protect himself from all suits brought on this bond after Bishop was twenty-four years old, by a plea of the statute. Right and obligation are corre-

lative terms. It was an obligation of the plff. to sue within that time. Could the legislature repeal all limitation acts and leave all past cases without bar? No more can they enlarge the time for one year as to past contracts, it equally impairs the obligation of the contract. The obligation of the contract is something more than the contract itself; it comprises the law as existing at the time, and which relates to the enforcing the contract; to impair this law is to impair the obligation. *Prospective* limitation laws do not do this. 12 *Wheat.* 326, 379.

*Cur. adv. vult.*

*Mr. Justice Black* delivered the opinion of the court.

BLACK, J.—"In August, 1808, Lewis Williams was appointed by the Orphans' Court of Kent county guardian of William S. Bishop, the plff. in this action. He gave bond in the sum of $3000, with the usual condition, in which John Wilds, Maskline Clark and James Spear were his sureties.

This action is to recover from the administrator of John Wilds the balance due from Lewis Williams the guardian, which the guardian owed at his death to his ward. There is no controversy as to the amount of that balance, the parties having agreed upon the sum for which judgment shall be entered, provided the court should be with the plff. on the questions of law presented for their decision.

The plff. attained the age of twenty-one on the 29th day of August, 1824. On the 8th day of August, 1827, he instituted an action against the above deft. on the above guardian bond, in the Supreme Court for Kent county, which was within three years after his coming of age. He obtained judgment in this action at the March Term, 1830, which judgment was reversed by the late High Court of Errors and Appeals, on a writ of error at the June Term, 1831. The present action was brought on the —— day of July, 1831, and is upon the same guardian bond upon which the former suit was instituted.

The pleadings are drawn out at length and are brought to a close by a demurrer on the part of the deft., to the surrejoinder of the plff., in which demurrer there is a joinder by the plff. The great and leading question to be decided by the court is whether the plff's. action on this guardian bond is barred by any statute of limitation of this state.

It is contended on the part of the deft., that inasmuch as the *present* action was not brought within three years after the plff. came of age, he is barred by the 14th section of the act of 1766, (1 *Del. L.* 424.) To this the plff. answers that he did commence an action on this bond within three years after he attained twenty-one, which action was pending in the Supreme Court on the 29th of January, 1829, when the present act of limitation passed; that in the latter action he obtained a judgment in March, 1830, which judgment upon a writ of error was reversed by the late High Court of Errors and Appeals in June, 1831; and that the present action was brought upon the same bond within a year after that reversal, and that according to the provision of the 10th section of the act of 1829, his present action is not barred. The deft. in reply to this contends first, that

the act of 1829, (7 *Del. Laws,* 267,) and more particularly the 10th section of it, does not apply to suits brought prior to its passage; and secondly, that that act cannot apply to, or operate upon, guardian bonds executed before it was passed, because it gives a right to renew actions on such bonds, which did not exist under our laws when these bonds were given, and that the granting such a right in relation to such bonds then and antecedently in existence would conflict with that part of the 10th section of the 1st article of the constitution of the U. States, which restricts the states from passing any law *impairing the obligation of contracts.*

These are substantially the positions presented for consideration.

The 14th section of the act of 1766, provides "That all actions upon administration or guardian bonds hereafter executed, shall be commenced within six years after the passing the said bonds, and all actions to be commenced on any such bonds already given, shall be brought within six years after the publication of this act, and not, after," saving the right of those who may be under twenty-one years of age, femes covert, &c. &c., of bringing their actions within three years after the disability is removed.

The act of 1829, provides "That no action shall be brought upon any guardian bond either against the principal or sureties, after the expiration of three years from the determination or ceasing of the guardianship." A saving of three years to infants and some others, is also provided by this act, after the removal of the disability. This act is by its terms extended to all the causes of action enumerated in it, "as well those that have been taken, executed, or settled heretofore, as those that shall be taken, executed, or settled hereafter."

The 13th or repealing section of the act of 1829, declares that the 14th section of the act of 1766, together with various other sections and acts shall be and are thereby repealed from and after the first day of September, 1829, "except so far as shall concern any action, cause of action or matter which now is or on or before the first day of September next, shall be barred according to *the form or effect of the aforesaid act or sections, or either of them;* and to any action or proceeding upon any recognizance, bond, cause of action, account or matter, which action or proceeding now is or on or before the first day of September next, shall be according to the form and effect of said acts or sections, or either of them barred, shall remain a bar and may be pleaded, and shall avail in the same manner and as fully and effectually as if this act had not been passed."

This question then arises on a consideration of the foregoing sections. Was the action or right of action of William S. Bishop on this bond barred on September 1st, 1829, "according to the form and effect" of the 14th section of the act of 1766? If it was, that act avails and must continue a bar.

The plff. attained the age of twenty-one on the 29th day of August, 1824. On the 8th day of August, 1827, (in less than three years after he came of age,) he brought an action on this bond against the present defendant in the Supreme Court. On the 29th day of January, 1829, the day on which our present act of limitation was passed, and also on the first day of September, in the same year when the repealing clause in it took effect, that action was pending in the-

Supreme Court, and undecided. On the 8th day of August, 1827, the day on which the writ was issued, the plff's. action on this bond was not barred, as three years had not elapsed after his attaining age, and as that suit remained in the Supreme Court undecided on September 1, 1829, the plff's. action or cause of action was not barred on that day. His action had been commenced within three years, and according to the "form and effect" of the act of 1766, was not barred. It was still in court undecided on the 1st of September, 1829. Then if his action or cause of action was not barred on that day, the 14th section of the act of 1766 is no bar to his action, inasmuch as that section stands repealed by the act of 1829, except so far as concerns any action or cause of action which by the *form* *and effect* of that section was barred on the first day of September, 1829. To such actions and causes of action and to such only, can the 14th section of the act of 1766 be held a bar. Its principle of operation or existence is retained for those cases alone, in relation to which it was a bar on the 1st of September, 1829. As to all other cases it is extinct. If then you show that by that section the plff's. action or cause of action was not barred, when that section was to stand repealed, then by the express terms of the repealing section in the act of 1829, the 14th section of the act of 1766 was as to such a case repealed, and could no longer operate upon it. The pleadings in this case show, and the fact is not controverted, that on the 1st day of September, 1829, an action was pending in the Supreme court between these same parties on this very guardian bond, which was not then barred by the 14th section of the act of 1766, because that action had been brought within the time limited in the saving in that section.

The action therefore, of the plff. on this bond not having been barred on September 1, 1829, is not within the exception in the repealing clause of the act of 1829, and the 14th section of the act of 1766, as to his action or right of action is entirely repealed, and can no longer operate or apply to this bond.

The next question to be considered is whether the act of 1829, or the 10th section of that act can be applied to actions pending in court when that act was passed.

If such actions or causes of action were not barred on the 1st of September, 1829, and they are to be held as not within the act of 1829, because actions were pending when that act passed, then it would follow that to such actions or causes of action, there is no limitation by our statute. If they were not barred on September 1, 1829, according to the provisions of the limitation acts which were on that day to stand repealed, and are not within the act of 1829 which on that day was to go into full operation, and are not within the exception contained in the repealing clause of that act, where is there any act of limitation to bear upon them, or that can now be used as a bar to actions that were pending on 29th January, 1829, which were not barred on 1st September, 1829, and which may be again in consequence of a non pros. discontinuance or otherwise, brought by a renewed suit before this court. Is there any thing in the act of 1829 which expressly excludes pending actions from the

13

operation of this 10th section?  If there is not, then upon what principle or for what sufficient reason should they be excluded?

The design of our acts of limitation is to close our courts against those who sleep on their rights, and neglect to prosecute them in a reasonable time; this neglect is to be taken as evidence of the debt being paid or released.  If, however, the party does not allow his claim to sleep, but prosecutes it within the time prescribed, this presumption does not arise; he may fail in his suit, but his conduct has rebutted the legal presumption.  The general design of the legislature in enacting the 10th section of the act of 1829, was to protect the rights of all those who had prosecuted their actions within the time limited for bringing such actions, and upon a reversal of a judgment in any action, to give the party a right to renew it within a year from such reversal.  The words are general and without exception, where the first action was not barred by that act *at the time of bringing it.*  We think the present case is within the letter of the statute; but if we should be mistaken in this, it is clearly within its spirit and equity.

Suppose on January 1, 1828, A. to have made a sale of goods to B. on the same day he also makes a sale of goods to C.  On the 1st of January 1829, he brings suit for the price of the goods against B., and on the 1st of February or 2nd September, 1829, he brings suit against C. for the value of the goods sold him.  In each case he obtains a judgment, which judgments are reversed in 1831.  Three years have elapsed.  According to the argument he may renew his action against C. because no suit was pending, when the act of 1829 was passed, but not against B.; because a suit was then pending.  One claim stands barred and the other is free from all bar, although both accounts accrued on the same day.  Where is the reason for such a distinction.  If the law however, creates it, the court must yield to it, but the rule must appear to be clearly fixed to lead us to give effect to it, when we cannot perceive any good reason for the rule.

It will be observed that there are in the act no words expressly excluding from the operation of the 10th section, pending actions. Their exclusion is a matter of argument from some of the provisions of the law.  By comparing this act with former acts relating to the same matter, it is believed that aid as to its true construction may be obtained.

By comparing the 10th section of the act of 1829, with the British statute of limitation passed in the twenty-first year of the reign of James the first, chapter 16, and with our act of limitation passed in 1742, in the fifteenth year of George second, (1 *Del. Laws* 229,) it will be perceived that in the act of 1829, there is a change of phraseology, from what had been used in the acts referred to, touching the same subject matter, which it cannot be believed was accidental or undesigned, as but little if any doubt can be entertained that our statute, and also the British, must have been before the drafter of this 10th section; or in fact, that that section was prepared from those two statutes.

The 3rd section of the statute of James provides, that all actions of trespass, replevin, detinue, of account and upon the case, &c. &c., which shall be sued or brought at any time *after the end of this pre-*

*sent session of Parliament,* shall be sued within —— years, &c. &c. The 4th section provides for the renewal of the suit in the event of reversal or arrest of judgment, as was the design of the 10th section of our act of 1829. Its language is—if in any of *the said actions* or suits judgment be given for the plff., and the same be reversed by error, &c. &c., the plff. may commence a new action within a year. The right of renewing was thus confined to the *said* actions; to those actions enumerated and designated in the preceeding section, which were those actions which should be brought after the end of the session of that Parliament which enacted the law. Pending actions were therefore clealy excluded by the terms of the statute of James from this privilege of renewing within a year after reversal. It may not be amiss to remark, that this section has in England received not a rigid or merely literal construction, but a liberal one; and that cases not within the *words* of the section, (as the termination of a suit by death or marriage,) have by an equitable construction of that section been held within it. The inclination of the courts in England has not been to circumscribe the operation of this section, but rather to enlarge its limits and to embrace within it those cases which *equitably* ought to be covered by it.

Should this court, in giving a construction for the first time to a section similar in its design, be inclined to adopt one less equitable and liberal than has been adopted in England unless they are plainly required by the law in question so to do?

In our own statute passed in 1742 (1 *D. L.* 229,) a feature similar to that in the statute of James is to be found.

The 2nd section provides that all actions of trespass, replevin, on the case, &c. &c. "which shall be sued at any time *after the publication of that act,* shall be commenced within it, &c."

Section 3rd which follows, provides "that if in any of the *said* actions or suits judgment be given for the plff., and the same be reversed by error, &c." "That in all *such cases* the plff. may commence a new action within a year."

This act did not give the right of renewal within a year after reversal to actions pending at its passage, but confined this privilege to the *said actions*—that is, causes of action which should be *sued after the publication of that act,* and necessarily excluded all brought prior thereto.

Had the legislature of 1829 intended to have confined the 10th section of the act of limitation passed by them, to actions futurely to be brought, why not retain the phraseology of the act of James or that of our own statute of 1742. Can we suppose otherwise, than that they designed to vary the provision when they have in a very material point changed the phraseology? They do not use the words "if in any action to be brought *after the publication of this* act;" nor "if in any action *hereafter to be brought;*" nor "if in any of the *said* actions" judgment be rendered for the plff. and the same be reversed for error, &c., thus confining the section, to actions *"to be brought"* according to the language of the sections preceding, but they use these comprehensive words "that if in *any action,* judgment shall be rendered for the plff. and the said judgment be afterwards reversed, &c., a new action may be brought upon the same

cause of action at any time within a year after said reversal." Had it been their intention to confine this provision to suits thereafter to be brought and to exclude pending actions, why abandon those guards in language which had been used in previous acts to effect this very object. When we find them using the words "if in *any action* judgment be rendered," are we to infer that they meant to say "if in any action *hereafter to be brought*" judgment be rendered, and this too when we find that they cautiously abstain from using those words, which had been used in the section they were repealing, and which words excluded from the operation of a similar section, pending actions. Such an inference in our judgment would be directly contrary to that which ought under these circumstances to be drawn.

It has been urged with much earnestness by one of the counsel for the deft., that the act of 1829 cannot be pleaded to actions brought before it passed, and that the words of the proviso at the close of the 10th section, that "this proviso shall not avail if the first action at the time of bringing it were barred by *this act;* but if this act were pleaded in the first action and verdict thereupon found for the plff., such verdict shall be conclusive evidence that the first action was not at the time of bringing it barred by *this act,*" show that future actions alone were intended to be embraced by this section.

In considering this section the repealing section must be lost sight of. Suits that were pending on 29th January 1829, if barred at all were barred by acts passed antecedent thereto, and those acts by the terms of the repealing clause, were continued as a bar and were pleadable as such. To all actions not barred on the 1st of September 1829, the act of 1829 is the only one that can be pleaded. True it cannot avail *per se* as a bar to actions pending at its passage; but for this reason. They were not barred by the previously existing acts which were then repealed. If they had been thus barred, such acts were continued a bar; the act of 1829 did not create but continued this bar and made it perpetual, might it not then be argued with plausibility, that such actions were barred by the act of 1829, because that act continued that bar which had been fixed by antecedent acts.

The repealing clause makes perpetual the bar which existed according to the old acts on September 1st 1829. In relation to such demands therefore as were then barred, there could be no renewed actions, for that clause declared them forever debarred of a right of suit. A renewed action is therefore necessarily forbidden by this section as to all claims barred on September 1st 1829. The proviso in the 10th section then proceeds to exclude from a new action (not those cases which were barred by the former acts, as they were in fact excluded by the 13th section,) but those cases which were not barred on 1st September 1829, and which could alone be barred by the act of 1829; and to *prescribe what should be a conclusive rule of evidence, that the first action was not barred.* This rule is confined to those actions which were not barred on 1st of September 1829, and is to govern in all such cases. But no rule is prescribed as to what shall be evidence of a bar under the old acts on or prior to the 1st of September 1829. That is left to depend upon the terms of the old limitation acts and the proof in the particular case.

The language in the latter part of the proviso that the right given "shall not avail if the first action at the time of bringing it were barred by that act," cannot according to our judgment be held as excluding from the operation of the 10th section pending actions, when you consider the comprehensive language used in it as contrasted with the guarded phraseology of the statute of James, and the act of 1742.

This proviso became necessary to guard against certain actions or causes of action standing revived by the language used in the first part of the section, which were in fact barred by that act. One provision of that section is that "if the plff. or deft. die after writ sued and before the deft's. appearance, a new action may be brought at any time within a year after such death." Now if an action had been brought on an account of more than three years standing, and the plff. and deft. died after writ sued and before appearance, a new action might be brought within the year, although by the 5th section the action was barred. To prevent such a conclusion, or the right to sue where the action was barred by other parts of that act—would seem to have been the design, in saying that such right to a new action should not exist if the claim was barred by that act. If *that act* barred the claim a right to renew the action was not given by the 10th section. If the former acts barred the claim, the bar was perpetuated in the repealing clause, and by that clause those acts could always be pleaded to an original or renewed action.

The plff's. first action was brought in 1827 within three years after he came of age.. It remained in court on the 1st September 1829. He afterwards obtained judgment in that action—that judgment was reversed by the late High Court of Errors and Appeals in 1831, and the present suit instituted on the same cause of action in less than a year after that reversal. The plff's. cause of action was not barred on September 1st 1829, according to the 14th section of the act of 1766, a suit having been brought in time and then pending; as to his claim then the 14th section of the act of 1766 is repealed. It is not barred by the act of 1829—the 10th section of which in our judgment embraces all actions, as well those then pending as those thereafter to be brought—because his action was renewed within the time, and on one of the events provided for in that section; he is therefore entitled to judgment for his debt unless the act of 1829 does as is contended for by the deft., violate that part of the 10th section of the first article of the constitution of the U. States, which restricts the several states from passing "*any law impairing the obligation of contracts.*"

When the guardian bond on which this suit is founded was executed, suits upon such bonds were by the then laws of this state limited to six years after the passing of the bonds, with a saving of three years after they came of age to those under age.

The 3rd section of the act of 1742 heretofore referred to, giving a right to renew the action in certain cases did not embrace *guardian bonds*. In relation to *such bonds* therefore, there did not exist any provision for renewing an action upon it within a year after reversal or arrest of judgment, as was provided in the 10th section of the act of 1829, and which section clearly embraced *guardian bonds*. This

right thus granted to renew the action within the year it is contended, is a violation of the *obligation of the contract* made by John Wilds with the plff., because the laws existing when he entered into the bond, did not give such a right.

On an examination of the various acts of limitation that have been from time to time passed by the legislature of this state, it does not appear to have been their impression that such laws were to operate only on those contracts that should thereafter be entered into—nor that an enlargement or diminution of the time for bringing actions, would in relation to matters of contract or rights of action existing when such laws were passed, be a violation of this clause of the constitution of the U. States. An opinion directly the reverse seems to have been held.

Nor are we aware of any decision that would show that such a principle has been recognized by the courts of this state. These points are mentioned only as evidence that such has not been the view taken by the legislature, courts and bar of this state, as to the validity of such laws.

The counsel for the deft. have referred to the case of *Sturges* vs. *Crowningshield*, 4 *Wheaton* 122, and to the case of *Ogden* vs. *Saunders*, 12 *Wheaton* 213, to show the opinions held by the judges of the Supreme Court of the U. States, in relation to this question. In those cases the validity of acts of limitation in reference to antecedent contracts, was not the point debated before or to be decided by the Supreme Court. The judges referred to acts of limitation to illustrate their arguments and as analogous to the question they were considering, and each assumed the principle to be what they supposed in such a case it would be, and reasoned upon that assumption. No little difference of opinion seems to have been entertained by the judges in those cases (particularly in the latter,) as to the nature, effect and validity of such laws, arising no doubt from the fact that this question had not been debated before them or considered by them with a view to a decision upon it.

In the case of *Jackson* vs. *Lampshire*, 3 *Peters* 280, the right of a state to pass registering and recording acts, and also acts of limitation, and to prescribe their effect is expressly recognized, and in *Hawkins* vs. *Barney's lessee*, 5 *Peters* 467, where the question of constitutionality of an act of limitation of Kentucky was discussed, its validity was sustained.

Does an act of limitation which may exist at the time a contract is made enter into or become a part of that contract—or does it pertain to the remedy only?

A contract is an an agreement by which a party engages to do or abstain from doing a particular thing:—The law binds him to perform his undertaking—this is the obligation of his contract: The obligation of the contract has been styled "the chain of the law" which applies to and enforces performance or the payment of an equivolent for non performance. The contract is the act of the parties—the law imposes the obligation or duty of performance; but the remedy by which that performance is to be enforced or an equivalent in money obtained belongs to government and is granted on such terms and to such extent as to their discretion may seem proper.

Whether an act of limitation which takes away a *creditor's* right to sue—or limits it to a less time than it was limited by the law existing when the contract was made impairs the obligation of his contract and is a violation of the constitution, is not the question presented to the court; and, according to our view if the case, is not one that it is necessary for us to decide. If it was we should have no difficulty on the point. The question before us is, according to our apprehension, a very different one—It is whether a law which enlarges the time for bringing a suit, and thus keeps the cause of action alive or in a condition to be sued upon for a longer period than it would have been by the law in force when the contract was entered into, is a law impairing the obligation of a contract?

Does the keeping the contract from annihilation—the preserving it in force when not against its terms or stipulations, import the same as impairing annulling or destroying it? To continue a contract and to impair or destroy it are matters essentially different. How can a law which gives life or action to a lifeless dead or ineffective contract be said to impair its obligation unless that death or ineffectiveness was produced by the terms of the contract?

In this case the contract and obligation of the obligors in this bond was that Williams should faithfully discharge his trust as guardian, and pay and deliver to the plff. all such sums of money and other estate as should come to his hands as guardian, after deducting the allowances that might be made by the register, and upon this event and *on this alone,* that obligation *"should be void or else should be and remain in full force and virtue."* Performance of this engagement and *performance alone* according to the terms of the contract is to annul or satisfy it. This bond contains no stipulation that the obligors shall be released if they are not sued upon it within three or six or any other number of years. Time is not made a part of this contract—in relation to it there is no contract nor stipulation. In the absence of any contract on this point how can we say that the obligation of the defendant's contract is impaired by a law which allows the plff. a further time to *compel the defendant* to execute his contract than was given by the law which was in force when the contract originated, when according to the terms of the contract performance alone was to discharge the defendant from this obligation.

The CONTRACT is one thing—that the legislature cannot alter—the *remedy* for a violation of the contract is another and may be altered, modified enlarged or limited according to the discretion of the legislature, who alone gives it. They may fix a period within which if no action be brought, their courts shall be closed, and establish as the rule for the government of their courts, that the effect of such acquiescence shall be evidence that the contract has been performed or satisfied. This presumption or evidence of performance is not a part of the contract and they may in their discretion change or alter it. How does a change of such a rule of presumption, or evidence of performance, which rule is *created by the legislature* and not by the parties, impair the obligation of the contract.

In this state the lands of a debtor (except under a mortgage) cannot be sold by execution process, if the rents and profits will in

seven years pay all liens.   If this restriction were repealed and the lands of a debtor sold under a judgment existing prior to the repeal, which would in seven years pay all liens, could he establish the position that such sale was illegal and the repealing law void because a more prompt and enlarged remedy was afforded the creditor, than was given him by the law in force when the debt arose.   Would the obligation of his contract be violated or impaired by the repeal, when that repeal merely enlarges the remedy?

In Virginia lands cannot be sold to pay debts, but as in England, a moiety is delivered by elegit to the creditor.   If that state should adopt our system, would this change of the remedy impair the obligation of contracts existing at the time of the change and prevent the sale of lands to satisfy debts which originated before the change, because lands could not be seized and sold for the paymrnt of debts when these debts were created?   Such a modification of the remedy could not it is apprehended be deemed an impairing of existing contracts or of their obligation.   Such acts would partake of the character of acts of limitation, and would all be held as relating to the remedy and not interfering with the contract or its obligation, as the right of a state to regulate the remedy and modes of proceeding in its own courts, and to prescribe the evidence which their courts shall receive and the effect of that evidence cannot be questioned. This is a right which the states have not parted with.

It does not belong to a *debtor* to complain that a legislative act impairs the obligation of his contract, unless the terms or effect of that contract be altered by such law.

He cannot complain that the obligation of his contract, which is performance of his agreement according to its stipulations, is impaired, because the legislature grants to his *creditor* further time means or remedies to coerce or compel the debtor to execute an agreement or contract which he has contracted to execute or perform without limitation as to time.

The *debtor* is not for upholding, or sustaining or continuing the existence or remedies of the contract, but for holding it at an end and as no longer of any obligation—not because he has performed what he engaged to do, but because his creditor has not forced him to that performance by a suit within a given time, *which time* was not provided for by the contract—and he contends that the obligation of his contract is impaired because an act of limitation extends to the person with whom he contracted further time for suit than was given by the law when the contract was made.   That the extending or enlarging the remedy to compel the defaulter to comply with his contract—the holding the contract as not extinct annihilated or without a remedy to enforce it, impairs the obligation of that contract.   Such in our judgment is not the construction to be put on the clause of the constitution of the United States, and we cannot consider the 10th section of the act of 1829 regulating the remedy on contracts and making a most equitable provision for the renewal of actions, where a party had not slept upon his rights beyond the time fixed by law, but asserted them by an action within time, which for some error has been reversed, can be held in relation to a debtor as impairing the obligation of his contract.

There remains one point to be noticed which was urged by the counsel for the defendant.

The declaration avers that Lewis Williams did not in his lifetime pay to the plff. the $3,000 the penalty of the bond but wholly refused so to do, and that the same remained at his death and still remains due and unpaid to the plff. It further avers that neither John Wilds in his lifetime or Thomas Wallace his administrator after his disease though often requested ever paid William S. Bishop any part of that sum; but there is not an express averment that the administrator of Lewis Williams did not pay the amount of the bond. For the want of this latter averment it is contended the declaration is defective and that as the demurrer reaches back through the whole record and attaches ultimately upon the first substantial defect, this error in the declaration of the plff. must be fatal to his action.

The answer to this is a very plain and conclusive one. No part of this record shows that there ever existed any administrator to the estate of Lewis Williams. If there was no administration on the estate of Williams, there could not with any propriety, certainly there was no necessity, for such an averment as is contended there should have been. *De non apparentibus et non existentibus eadem est lex.*

This declaration negatives payment by each and every person connected with the guardian or this surety or their estates whose duties and rights it was (so far as appears from the record) to pay this bond or comply with its condition. It avers that Williams did not pay in his lifetime—that the money remained due and unpaid at his death and still remains *due* and *unpaid*. More than this the law does not require.

The opinion of the court therefore is that the demurrer must be overruled and that judgment be entered for the plff. for the penalty of the bond to be released on payment of the sum ascertained by the agreement of the parties to be due and the costs.

Judgment for plaintiff.

*Huffington* and *Ridgely*, for plff.
*Bates* and *Clayton*, for deft.